UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEI A.V.,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br><br>Respondents. | No. 1:26-cv-04532-TLN-CSK<br><br>A# 236-526-088<br><br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Daniei A.V.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1), Motion to Appoint Counsel (ECF No. 3) and Motion for Temporary Restraining Order ("TRO") (ECF No. 9). Respondents filed a response. (ECF No. 8.) For the reasons set forth below, the Petition is GRANTED (ECF No. 1), the Motion to Appoint Counsel (ECF No. 3) and Motion for TRO (ECF No. 9) are DENIED as moot, and Respondents

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

are ordered to IMMEDIATELY RELEASE Petitioner.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

This matter arises from Petitioner's allegedly unlawful detention by immigration officials. (ECF No. 1.) Petitioner entered the United States on a Visitor for Pleasure visa on or about July 6, 2021. (ECF No. 8 at 2.) He allegedly remained in this country beyond the expiration of the visa on January 4, 2022. (*Id.*) From July 30, 2025 through April 6, 2026, he was convicted of three misdemeanors for driving under the influence stemming from two separate incidents and was arrested for the same offense on two other occasions. (*Id.* at 3.) Petitioner has a family in this country, including two children, whom he supports. (ECF No. 1 at 5.) Immigration and Customs Enforcement ("ICE") arrested him on June 6, 2026, during an adjustment of status interview. (ECF No. 8-2 at 2.) The government placed him in removal proceedings through a notice to appear on June 16, 2026. (ECF No. 8-1.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on June 12, 2026, challenging the legal authority for his detention. (ECF No. 1.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v.*

---

[2] In the interests of justice and to promote judicial efficiency, the Court withdraws the reference of this matter to the assigned magistrate judge (ECF No. 6) and will rule directly on the underlying habeas petition.

*Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner claims his detention without a bond hearing violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 16.) Respondents argue that Petitioner is validly detained under 8 U.S.C. § 1226(a). (ECF No. 8.) Respondents concede that Petitioner is owed a bond hearing but contend Petitioner is required to *request* a hearing and he has not exhausted his administrative remedies. (*Id.* at 3–6.) The Court begins with an analysis of prudential exhaustion and then turns to Petitioner's Fifth Amendment claim.

### A. Prudential Exhaustion

"Under the exhaustion doctrine, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *S.E.C. v. G. C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981) (quoting *Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 50–51 (1938)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (abrogated on other grounds). However, the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Id.*

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Nevertheless, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where

administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C.*, 637 F.2d at 688 n.4.

After consideration of the *Puga* factors, the Court concludes that prudential exhaustion is not required in this case. An administrative record is not necessary to resolve the due process questions presented by Petitioner. Waiver of the prudential exhaustion requirement will not encourage the deliberate bypass of the administrative scheme in future cases because it is not clear whether Petitioner was ever provided a meaningful opportunity to request bond or even informed of his right to so request. Further, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (*citing Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)).

Even if exhaustion were required, waiver would be appropriate to avoid further irreparable harm to Petitioner and further delay in vindicating his constitutional rights. *See, e.g., Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025). Petitioner is suffering irreparable harm as a result of his continued detention which would unnecessarily continue without waiver of exhaustion. Accordingly, the Court will not deny Petitioner's request for habeas relief for failure to exhaust administrative remedies.

B. Fifth Amendment Due Process Violation

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez*, 872 F.3d at 990. The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the

procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025). One's liberty interest may be strengthened over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest. He has resided in the United States for four years and built a family here, which he supports. (ECF No. 1 at 5; ECF No. 8 at 2.) Even if he is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693. Respondents do not dispute Petitioner's liberty interest. (*See* ECF No. 8.) Thus, Petitioner has a liberty interest protected by due process. The Court next turns to the procedural safeguards that were owed to Petitioner.

*ii. Procedures Required*

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094. Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds the risk here is considerable where Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Although Respondents filed documentation of Petitioner's criminal history, they neither argue Petitioner's misdemeanor convictions or arrests are grounds for mandatory detention, nor claim Petitioner now poses a danger to the community. (*See generally* ECF No. 8.) Indeed, Respondents concede that Petitioner is entitled to a bond hearing. (*Id.* at 3.) On this record, the fact that Petitioner has prior misdemeanor convictions and arrests only highlights the necessity of procedural safeguards where a neutral decisionmaker can consider all facts and evidence to determine whether Petitioner's detention is now justified. *See Doe*, 787 F. Supp. 3d at 1094 (noting the same); *see also R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

Third, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Notice and custody determination hearings are routine processes for Respondents. Indeed, they are the very processes contemplated under 8 U.S.C. § 1226(a), which Respondent agrees govern Petitioner's detention. Any burden

associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Respondents, agreeing that Petitioner is owed a bond hearing, represent that they are "in the process of submitting a bond hearing request to" the immigration court. (ECF No. 8 at 3.) This submission does not cure Respondents' violation of Petitioner's due process rights. The Court concludes, based on its *Mathews* analysis, that Petitioner was owed a *pre-deprivation hearing*. *Zinermon v. Burch*, 494 U.S. 113, 127–29 (1990) ("Applying this test, the [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property. . . . *Parratt* and *Hudson* represent a special case of the general *Mathews v. Eldridge* analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide."). The appropriate remedy for this violation is to order Petitioner's release.

Respondents argue that Petitioner did not request a hearing and therefore he is not entitled to relief. However, the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (citing *Grannis v. Ordean*, 234 U.S. 385, 394 (1914))). Respondents are in control of Petitioner's custody and it is the government's duty to provide sufficient process when depriving an individual of their liberty. The Court finds a clear violation of the Fifth Amendment and Petitioner's procedural due process rights.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1).

The Court DENIES the Motion to Appoint Counsel (ECF No. 3) and Motion for Temporary Restraining Order (ECF No. 9) as moot.

1. Respondents must IMMEDIATELY RELEASE Petitioner Daniei A.V. (A# 236-526-088) from custody. At the time of release, Respondents must return all of Petitioner's

documents and possessions. **Respondents must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. **The Clerk of Court is directed to serve Golden State Annex Detention Facility with a copy of this Order.**

4. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: July 23, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE